Good morning, your honors. Appellant believes the answer to this question is a given. What is more important, to preserve finality for the abusing employer or truth for the victimized employee? The immunity that appellees seeking here is an immunity that they are asking to provide to someone who has made a false report and knows it. No legislator, I believe, and no reasonable person would say that that's the way the immunity statutes were intended to apply. You can't have an absolute immunity in this kind of circumstance. Could I ask a favor of you? Sure. Could you just, in sort of one sentence fashion, give me a list of what you claim the errors were that the district judge made that we should be reversing on? In one sentence? Well, for each one, just say the judge did this wrong, the judge did that wrong. Okay. Because in your statement of the issues, you don't number them or list them in your brief. Well, I believe that they're in there textually, but you're correct, I don't list them one by one. The largest error, as I look at it, well, there's two large errors. One is that the judge did not analyze this case as a case involving post-release retaliation. He simply focused on the pre-release activities. There's only one, in his mind, significant post-release activity, and that was the reporting to the board was a pre-release activity, and they're saying that everything that flowed from that has got to be considered released. Your first claim is failure to deal with post-release retaliation. Correct. What's your second? A second issue which is related is the failure to address this matter as a federal issue. The immunity that he was seeking to apply, that Kaiser and the court applied, related to a state court law, and that law cannot preempt the federal law. If that were the case, then there would never be any civil rights cases, because all you have to do is bring up a civil rights issue in the litigation, and then you're shut up. You can't talk any further, because you have the litigation immunity. You have all the different immunities that attach. The case law that I see. That doesn't follow, to me. I mean, it's a specific immunity, and we have plenty of civil rights cases in which there's no immunity that is invoked for anything in terms of either age or employment or handicap or all kinds of discrimination. They're saying that they have immunity from the false report, because it was in a proceeding that confers immunity, and that's just not correct in the first place. But if that were the case, then how do you ever bring a retaliation case post-release? Of course, I have a lot of issues which I've described in the release itself. I don't think that release should have been held. I believe that at the time the release was made, Kaiser had no intention of following through with the important issue that they were addressing. We thought that was closing this matter. Let's assume just for now, and I know you would disagree, that the release document is valid, so we need to figure out what's in it and what's not in it. And your first point is that the judge seemed to collapse these things and didn't address post-release retaliation. What were the events specific to post-release retaliation that you think would fall outside of the agreement? The events began. The problem is that the trigger occurred before. The trigger was the introduction not mandated. I remind you, it is not mandated to make false reports. There's no mandate to make false reports. Obviously, there's a mandate. You're losing me. I don't know what you're saying. Judge McEwen's question is the same one I'm interested. So if you could focus on that one and answer it. Let's just assume whatever happened that is specifically released is valid. But what events do you think fall outside of the release so that they could be analyzed separately? The letter, the termination letter, was sent to the board before. But the enforcement and the prosecution of those crimes, so to speak, was all after. All that was done before the release was the mailing of the letter to the board. I think we're asking specifically if you could describe the physical or verbal acts that constitute post-release retaliation. Let me give you some examples. There was quite a bit of interaction between Kaiser Counsel and myself regarding her obligation to correct the impression that was left out there. After the release, we understood that he should be allowed to have a voluntary resignation. A number of things would flow from that. One is that his personnel record would reflect a voluntary resignation, and incumbent in that is that they would provide to others outside who inquired that he was employed at Kaiser from such and such. That's actually a potential breach of the agreement, the fact that there wasn't the voluntary resignation entered, so to speak, or whatever you would do with such a thing. Is that right? I mean, that actually goes to maybe a potential breach of the agreement. Yes. Well, we believe that they breached the agreement specifically, but they also did it in a retaliatory motivation. They wouldn't give us copies of any information. They wouldn't share. When he was being investigated by the RCB, they would not confirm to the investigator that there had been a release or that they had paid him a large sum of money. So the investigator's starting to think he's making this all up, because there's nothing to determine. Where is their legal obligation to do so? There is a duty under the contract, as I believe. The spirit of the contract was that this is closed and that they will do nothing to reopen it, and especially in this circumstance when they initiated the triggering for an investigation, for them to support the investigation. You realize you've scooted off. You're back to a breach of contract. And what we're trying to get you to focus on, don't tell us the breach of contract. That's not what we're interested in right now. What we want to focus on, what happened after the signing of the contract? What specifically did Kaiser do after the signing of the contract? Which events occurred after the contract signing? Which shows a claim under the ADA? Okay. All of the events that I'm describing, whether we characterize them as breaches of contract or retaliation, are similar. The events that occurred afterwards included the failure to let the public know that he is not a terminated employee, the failure to let the board know that he's not a terminated employee. When asked to let the public know, what were they supposed to do? They needed to correct the personnel record. And when an inquiring employer asked about him, they needed to respond. They didn't do that. Hold on. Before you get to that second part. But on the first part, you're saying they didn't correct the record? Now, actually, didn't by February 9th they insert the resignation into his file? Your Honor, they may have done that. I don't believe that they did that. I was asking for that in March, April, May, June. I was asking for that. They refused to give it. Do we have any – was there any evidence before the district judge, other than that there was a hiatus between the agreement and the entry of the resignation, but that by February 9th it was in the record? Is there any other evidence? Yes. The evidence is my correspondence with Deborah Booker, who was now Deborah Shively, who was the Kaiser attorney with whom I was talking on the telephone and corresponding on this very topic. There's a letter where she tells me not to contact Henry Diaz, who was the internal person who we were trying to get the letter from. There was a lot of interaction. And it's in the declaration. You're losing me because the evidence appears to be that by February 9th this was on the books, so to speak. It was not on the books. That's the problem. The evidence appears that way because now it's on the books. At the time it was not on the books. So you're saying they fabricated the February 9th date? Oh, yes. I am doing that. I am saying that. That's part of my problem. But isn't your best point that – what's his name, Bleeker, the RCB? Yes. He shows up on February 1st, right? So no matter how you cut it, when he shows up and he gets the personnel file, the resignation is not in it, correct? That's how I understood it. So that's point one. Now let's go on to other than the fact that the resignation is not in the file, what's the next act of retaliation? You say that they won't confirm that he worked there, right? The entire process of the way the investigation was handled. The people at Kaiser initiated by a letter with false charges and they prosecuted it, so to speak. They provided information to the investigator that was very carefully selected. The motivation for that selection was retaliation, not truth. The whole purpose of giving the investigator only the things that were negative to Mr. Pardee Well, let me ask you, what should they have given? What physical documents should they have given to Bleeker that they didn't because of an act of retaliation? They should have given the entire personnel file, including the correspondence between Mr. Pardee and various people such as Janet Shade and Mary Ellen Thodey, who he wrote to where they discussed the discrimination that was ongoing. The investigator walks in and he said, oh, this is just a cranky employee who's unhappy that he got fired. There was zero in the record that was given to the investigator to support our contention is that he was retaliated against and that he was not just an employee who got fired, but an employee who got fired because he was protecting patients and that he was criticizing the system. That's why he was fired. He wasn't doing the right things by their standards. Again, I'm trying to focus on what physical evidence or documents they didn't provide. You're saying in his personnel file there was the history of him making the EEOC claims and the ADA claims, correct, and the union claims? In the files there were all those. They may have segregated into a different file. What's your evidence that when Bleeker showed up on February 1st, or what evidence was there before the district court, that is, when Bleeker showed up on February 1st and he got the personnel file, that that wasn't in it? The evidence is that eventually we got all the records from the RCB through a subpoena that indicated what was given to Bleeker, and none of that was among them. That was before the court. It's hard to show the absence of something, Your Honor. But we had all the records, and it wasn't among them. If, indeed, it was among them and I made a mistake, certainly opposing counsel had every right and every reason to say, oh, no, no, you're mistaken. They are, in fact, in there. If I want to check you on that, how can I go to the record? Say I'm the district judge. I'm going to say, okay, I know you say this, but where's your proof? Because you have to show some proof on this motion here before the district judge. Where's the proof? What declaration could I go to to see that the file produced did not contain the history of the EEOC and the ADA claims? The only declarations on that point would relate to my declaration where I talked about the discovery and Mr. Pardee's declaration. There's no counter-declaration. We made that point. So really the only declaration as to what was in the file produced, since it was produced to you, is your declaration, correct? Well, I believe there was a declaration from Deborah Shibley which said that they turned over some records. I'm not clear on that particular one. But, Your Honor, I see what you're saying. The proof is the fact that we made the assertion it wasn't there and it was never rebutted. It's hard to prove the absence. Well, let's step back just a second. And then the letters were submitted. Excuse me. Can I elbow my way in to ask you a question? You don't mind, do you? I don't mind at all. Okay. This is a summary judgment. Is that correct? Yes. All right. And in order to overcome summary judgment, there must be facts alleged that the district court, in reading the opposition to summary judgment, will have cited to him. In your opposition, did you specifically state facts that would show that there's a material fact in dispute which should overcome the summary judgment motion? Yes, Your Honor. Okay. And if I were going to the record to find that evidence so I could say, no, the district court was wrong and should not have granted summary judgment, where in the record would I find that particular evidence? The best place for you to go is to the declaration of Mr. Pardee and the attachments to it. Okay. And that would be where in the record? I can't give you the exact citation by memory. But if you can get the non-rebuttal. What you can do is you can provide it to the non-rebuttal. Could you find that while your adversary is speaking? Certainly. Then I can look in the record. It's in the index. Specifically. Thank you. Okay. In the declaration and in my declaration where I've made a few attachments, the assertion is made that these particular letters, some of them are included in there, were not given and should have been given. Mr. Pardee did give some of the materials to the investigator, but by that time, which was June, the investigator had already gotten everything from Kaiser, and he was extremely skeptical because we're showing him that Mr. Pardee was, in fact, a complainant who had LODs from the EEOC for discrimination, and he's thinking we have a whole other animal. And he was, as I said, very skeptical because he saw nothing in what he was already given by Kaiser. He didn't even talk to us until he was far along. Let me say that I have no problem at all with the idea, the theory, that anything that happened after the agreement, which shows ADA discrimination, that you're entitled to charge. I don't have any difficulty with that at all. And the only issue is whether there were facts sufficiently presented before the district court that he should not have granted the summary judgment. So if these facts are there, which were material facts and evidence, then the summary judgment as to that issue should not have been granted. So when you show me that part of the record, I'll be able to read that and make that determination. But they must be facts. They can't be just statements of what you think happened. And I take it you're telling me the facts are actually there. Yes, the facts were there. The facts of what was presented and what was ignored were there. I just was telling you it's difficult to show you what wasn't there. Well, maybe when you have an opportunity. I think Mr. Pardee's declaration is in the supplemental excerpts of the record starting at page 322. I can't find there what you're talking about, but it's long, so maybe you can point out to us. It's in attachments. Remember, what we're looking for is where does it show that the personnel file did not have this information that would have otherwise been in this. In other words, that they extracted it from his personnel file. And the second place where you can look is the absence of a reply. When I stated in my opposition brief that it wasn't there, there was no response. Yes, it was. That doesn't raise a material issue of fact, though. I mean, in other words, briefs are argument. They're not fact. It may be that you're entitled to some inference in terms of absence of evidence, although I'm not quite sure how that might play in here. But you actually have to show us something that would raise the issue of fact, and their silence I don't think can be enough. I believe Mr. Pardee's declaration is very clear that he said that I'm a whistleblower and that I am a person who has been discriminated against. No, that's not what we're looking for. We're looking for that the file produced on February 1st, the bleaker, did not contain prior information in my file about my activities and complaints. And that's just the same position I'm in. I just didn't find it. Where's the page? I'd like to know. The best I can tell you is it's in declarations, and I will certainly seek it for you. Well, hold on. To make it clear, we're looking for it. We want you to come back and say, judges, it's at SER page such and such. I know what you're trying. Can I ask you one question? Sure. When someone settles a case and they later say that there's a breach of the settlement agreement, they have one of two options. They can get rescission, give the money back, and then they get the original claims back plus any future claims. Or they can sue for breach of contract, keep the money, in this case $130,000, right? Keep the $130,000 plus sue for damages for breach of the settlement agreement. What you're doing is you're suing, you want to keep the $130,000 and sue for damage for the breach of the settlement agreement, correct? Yes, but we're perfectly willing, if they want us to put the money to credit it back against what he should be getting in the larger one for breaching it and retaliating against him, that's certainly an issue. Yes, we did ask for rescission. Yes, we did have. Where in the complaint did you ask for rescission? In our breach of contract sections. Could you point that out? Why don't you take, why don't we hear from Kaiser now, and you can take a moment during his argument to find these citations to the record. Thank you. Good morning. May it please the Court, my name is Thomas Martinschak, and I'm appearing on behalf of the defendant Annapolis Kaiser Foundation Hospitals. This case is about Mr. Party's attempts to get out of a valid release agreement, a release agreement that he had the assistance of both his union representatives. Did they plead a rescission claim? I beg your pardon? Did they plead a rescission claim? They did not, and I believe we brought that, we made that argument in the district court in our opening brief. Let me ask you, as a magistrate judge years ago, I've said a lot of employment cases where there were firings. The most important aspect, other than the money, was the ability to replace a termination with a resignation. It had the most, without that, there'd be no settlement. And that was what occurred here, correct? That the key thing was to replace the termination for cause with a resignation. Yes, there was a specific provision in the settlement agreement stating that Kaiser would accept, convert his termination into a voluntary resignation. And that would be done, he signed what, on January 21st? I believe he signed on January 13th. Okay, that's right. And when should they have placed in the file his record that he is no longer, his termination for cause is vacated and he is reinstated and resigned? The contract didn't specify that. They did it in less than a month. What does the record reflect as to the date on which his resignation was reflected in his employment file? In the declaration of Christopher Joyce, in I believe the last two paragraphs, he describes his actions in contacting the personnel department, instructing them to remove any documentation, indicating that Mr. Party's termination was involuntary, and substituting personnel action forms that showed that he voluntarily resigned. And I believe there were two separate memos from Mr. Joyce to the personnel department, making sure that not only the termination letter but also the personnel action form and then a form relating to unemployment insurance were all removed. So when in the file do you have the personnel action that says resignation? That's, again, I believe in Mr. No, when, when? I'm sorry, I don't know. Do you have a date? You signed the agreement on January 13th. Right. You can send all kinds of memos to people, but you know how it happens when you send people memos. When is it reflected in his personnel file that he resigned? February 9th. February 9th, okay. Well, is it reflected on February 9th? Or does Joyce say that on February 9th and 11th he directed Kaiser's document management center to remove the termination paperwork? I believe, Your Honor, there's no record evidence as to when the piece of paper physically made it into the file. So, in other words, you don't have a piece of paper that says employment action with a date on it that says employee resigned. We do have that, Your Honor. But it doesn't have a date on which it got into the file. It doesn't have the date on which it got into the file. Would you agree that the date was not before February 9th? Yeah, it was not before Mr. Joyce said he transmitted the instructions to the personnel department. Doesn't the agreement provide that it's effective approximately? I think it was about a week after he signs, after Hardy signs. That's correct. And so that's before Bleeker shows up. So he's, as a matter of contract law, he's entitled to vacation of his termination approximately the 20th, 21st of January. And Bleeker shows up February 1st and is given his personnel file that says he's terminated. Why isn't that a breach of the contract? Why isn't that a breach of the covenant of good faith and fair dealing? Because they didn't give him the benefit that he contracted for. Well, we did give him that benefit, Your Honor. We did make the requisite changes in the personnel file, but also Ms. Shively. Well, did you do it timely? I beg your pardon? Was it done timely? There was nothing in the personnel file or in the settlement agreement that required that the change be made within a specific date. It did say that it had to be made effective one week from the date of the settlement agreement. But when you give it to someone else, especially a regulatory investigator who could take away parties' license to practice respiratory therapy, isn't that saying Kaiser says this is the file and he was fired? Well, Ms. Shively, the Kaiser in-house counsel, also informed Mr. Bleeker that the termination was converted into a resignation. When? I don't, off the top of my head, don't know the exact date, but it is either in her declaration or the deposition excerpts that we submitted in support of our motion. Did she say she told that to Bleeker on February 1st? Or she told that to him later? Again, Your Honor, I don't know about the exact date, but she did inform him that. Don't you think there's a difference between going in and getting a personnel file in which you look at it and you see that on January such and such, he resigned, and that's what's given to the investigators, versus a personnel file that basically says he's booted, and then later you say, well, we actually kind of washed it over and he was terminated and he resigned. There's a real substantive difference in those two, is there not? Well, Your Honor, I think an important point to remember here is the settlement agreement included within it, there was no admission of liability on the part of Kaiser or that the accusations were false. And the obligations of Kaiser under the Respiratory Care Act are separate and apart from anything they can contract around in terms of a settlement agreement. So even though for settlement purposes we're agreeing we're converting this to a resignation, Kaiser can't go back and withdraw the good faith report they had made to the Respiratory Care Board. Don't you think, to me, if I was Bleeker and they said we terminated him, he then made a claim. He didn't sue. As a matter of fact, did he even have a lawyer when he settled? He just has a union person, right? He had a union rep and the union lawyer. Right, but he didn't have his own personal lawyer. He hadn't brought a lawsuit or anything yet, correct? Correct. And at that point, the hospital, we fired him for cause, but we entered into an agreement where we allowed him, we terminated the firing for cause, and we gave him $130,000. My ears would have went up and said, boy, you must have done something wrong to this guy to pay him $130,000 before he even filed a suit. So don't you think that that would have been material to Bleeker? Well, Bleeker was given all of the information he needed to conduct an independent investigation. But wasn't that a piece of the information? Doesn't that go to the credibility of the termination letter? I can't speak for Mr. Bleeker. You know, there was certainly a conflict here. There were many grievances filed. There were many charges filed. I guess the real question is we're having such a prolonged discussion about this. Isn't there a factual issue here on at least this point related to the obligation to put or convert the termination to resignation and the potential impact? I mean, I don't know. It may be kind of, you know, a mountain out of a molehill in the end, but isn't that a factual issue here as to whether there was a breach of the agreement? Well, there's a couple of points there, Your Honor. First, I don't believe there's any issue with respect to the ADA retaliation claim. Mr. Joyce did forward that information to the personnel department, and whether or not he may have, you know, done it three weeks versus in two weeks, that simply ---- If I go back to my first question, which is on the contract itself, why isn't there a material issue of fact as to whether there was a breach of the contract? Well, there's no evidence in the record, Your Honor. First of all, the agreement did not require that that documentation be inserted into his personnel file as of any specific date. So your argument would be if they waited a year or two years or three years, there would be no violation of the contract? No, Your Honor. I think there is a point at which there could be an issue. Right. And we would determine that point under California law as to reasonableness, and this individual entered into a contract, and whether he got the benefit of the contract has to do with how soon you should have changed and what your responsibility, Kaiser's responsibility, is to respond to outside investigators who happen to come, knowing that Kaiser has to know, his people have to know this contract has entered into. So can we really just say the contract doesn't specify a date, therefore Kaiser's home free on this issue? Well, additionally, Justice Wallace, there's also the fact that Mr. Hardy has not shown any evidence that he suffered any damages as a result of this three-week time period. But the district court didn't reach that issue, right? It didn't reach that issue. So that's really not before us, is it? Well, we made the argument before the district court, and we did submit the evidence in the record. So I believe that was before the district court. So, but as the court focused in its questioning of Mr. Hardy's counsel, although Hardy has alleged many adverse actions post-release, in fact there are no citations to the record, and she referenced, Ms. Dove referenced the Hardy declaration in the record. We also made a number of objections to that declaration and other declarations, which can be found at SER 449 through 484. And both Mr. Hardy's declaration and the declaration of Ms. Dove are full of non-admissible evidence. They consist predominantly of argument without any actual admissible evidence. There are many statements. So that was before the trial court in the opposition to motion for summary judgment? Yes. Okay. And that's the only place you know of where there are any facts or before the district judge in which there is an argument that there is a material fact and dispute requiring denial of the summary judgment motion. Is that right? I'm sorry. I missed part of your question. Well, I just want to know where to go in the record. That's been my problem from the beginning. And what we're focusing on is what was before the district judge, and were there material facts and dispute, facts in dispute, which were alleged that indicate that the district judge should not have granted you a summary judgment motion. And what you're indicating is the only facts that were presented, facts that were presented, were these two affidavits, and your argument was that in those affidavits they were not facts, they were arguments. Oh, exactly. Okay. But there's no other place we need to look other than those two affidavits to see if the district judge was right. Well, those two affidavits present Mr. Pardee's evidence in an attempt to show that there is a dispute of fact. Okay. Thank you. And that citation is the one that we've been referring to. The citation was to Mr. Pardee's declaration beginning at S.E.R. 322, and then there is also, I believe, a declaration of Ms. Dove, Mr. Pardee's counsel. Well, you do agree that it's an objective fact that none of this, the resignation and the information about the settlement was not in his personnel file when it was given to Bleeker. I don't agree with that. There's no evidence as to when specifically the personnel document was given. But even by your own evidence, they didn't ask him to put anything in the file until February 9th, right? Correct, when Mr. Joyce submitted it. Can't you admit that on February 1st, since you hadn't asked him to put it in the file yet, it couldn't possibly have been there? As of February 1st, correct. All right. So that's a fact, right? Right. Why isn't that a breach of contract there, period, objective fact? Well, because it's undisputed that Ms. Scheible did convey that information to the DCA investigator. When? That's either in her declaration or not. If she did not do it on February 1st when she gave him the file, isn't there a breach of contract? I don't believe so, because that information was conveyed to Mr. Bleeker. It was part of all of the information that was turned over to him as part of this investigation. I don't think the contract requires that the fact that it may not have been there when the personnel file was first presented to Mr. Bleeker, I don't think turns it into a breach when, in fact, it's undisputed that Ms. Scheible did convey that information. But you don't know when she did or the content of those two things, when she conveyed it and what she conveyed. Off the top of my head, I don't, but it would be either the declaration of Deborah Scheible. Is that here in the appendices? It is, and that would be either in her declaration, which begins at SER 148, or it would be in her deposition excerpts, which begin at SER 100 through 111. Okay. Now, was that before the district judge as your presentation for the motion for summary judgment? Yes, it was. We did present to the district judge that. We do not require a district judge to go filtering through the record summary judgment motion. You actually made this presentation to the district judge. Yes. And I believe our summary of the facts, we specifically stated that Ms. Scheible informed Mr. Bleeker of this, and we cited to the record. Okay. Thank you. Just briefly, we have this other issue that has come up about post-settlement conduct. Would you address two things? One, the conduct they allege, whether it in fact is post-settlement conduct, and also if we were to find there was some post-settlement conduct related to, that implicates litigation privilege, why we shouldn't follow the Seventh Circuit's lead on the interaction between the ADA and the litigation privilege? Okay. Well, to begin with, there are many post-release actions alleged by plaintiff. I think the trick is getting to the bottom of what's in the evidence and what's in the record before this court. And we submit that the only post-release conduct that is at issue here that is founded in actual evidence in the record are the communications between Mr. Bleeker and the HR representative, Mr. Joyce, and the communications between Mr. Bleeker and Deborah Scheible. Those communications are detailed both in Joyce's and Scheible's declarations and depositions. The letters are attached. It's all there. There's nothing in those communications that suggests that either Ms. Scheible or Mr. Joyce had some ulterior motive in terms of what information they were communicating to Mr. Bleeker. So you have those communications. The only other thing that's alleged is that Mr. – is that some unknown person at Kaiser did not respond to the inquiry of Dr. O'Kane, and we also included in our objections with the trial court objections to that declaration. And Ms. – I'm sorry. No, I'm not asking you yet. The substance of Dr. O'Kane's declaration is simply that he left two messages on an unspecified answering machine somewhere at Kaiser and no one returned his call, and that he sent a letter, which he didn't attach, again, to some unspecified address and didn't receive a call. What we submitted in support of our motion was the declaration of Ms. Jennings in Kaiser's personnel department who detailed the standard procedure for responding to employment inquiries and stating that their database showed that there were no inquiries for Mr. Pardee. So there's no evidence that anyone refused or failed to respond to an employment inquiry with regard to Mr. Pardee. Let me ask you about that. That's always been always a puzzler to me, evidence-wise, where one party shows a lack of evidence in their records. In other words, you have a standard procedure, but there's nothing in there. Of course, a mistake could have been made. And then the other party says, well, you know, we made this inquiry or, you know, we shot something over the bow. Why wouldn't that be enough of a factual issue so that ultimately it could be resolved in your favor but not at this point? Well, there's no evidence in the record that any particular person at Kaiser received these messages. Dr. O'Kane doesn't even give a phone number. Because we don't have the person. We don't know to whom they were directed, in other words. Exactly. We don't know the phone number.  We don't have a name. Isn't that enough at summary judgment if there's evidence a phone call was made but no evidence as to who it was made to? Isn't it enough to get past summary judgment if there is evidence that a phone call was made to the defendant, but we don't know which one of the hundreds of defendant employees received it? Given the lack of any specificity in Dr. O'Kane's declaration as to what number he called, you know, whose answering machine he got, it's not enough to get past summary judgment. And we have, on top of that, we have Ms. Jennings' evidence that there was nothing in Kaiser's standard record-keeping database that showed any inquiry was actually made. Okay. Thank you. I'm coming back. I looked at the citations you gave me, and I don't find what you say should be there. That's Shiley's deposition and declaration. I don't see that she says there when she told Bleeker that they had settled the case for $130,000 and that it was a resignation. She told him, Your Honor, that it was converted to a resignation. I didn't see that either. Okay. I can find it in here. Let me suggest this. If you find that supplemental citation, we have a little piece of paper that the clerk has, and you can just tell us it has a place for who you represent, and then you can just write on there what the excerpt is in the record. Your Honor, you had also asked about the Seventh Circuit opinion. I wanted to just very briefly address that. I think that that Seventh Circuit case actually supports the argument we're making. We're not saying that this circuit or any other federal circuit has adopted this type of litigation privilege, but certainly the court in the Steffies case from the Seventh Circuit looked at the substance of the communication, whether it fit into Illinois' litigation privilege, and that was a determinative factor in them coming to the conclusion that this could not be an adverse employment action. We would submit that in this case, similarly, the public policies underlying the privileges at issue here are so strong to ensure that health care practitioners are fit and able to practice safely in the state that that should be a factor that the court considers in determining whether this can be an adverse action upon which a retaliation claim is based. Thank you. Thank you. We have one minute for rebuttal, Ms. Dove. May I also give the citation? Yes, you can also fill out the form and provide us with the citation. Okay. They withheld patient information. That was another thing you asked me to list. When Ms. Booker was asked for patient information so the investigator could identify and try to investigate, Kaiser refused to give that information. And I just want to point out what Mr. Martinchuk said. It was not a good-faith report. It doesn't deserve the protection that a good-faith report should have had. And he also said Leiker was given all he needed to conduct his investigation. He was given exactly and only what they wanted him to have to conduct an investigation that was supportive of the false charges and the poorly investigated actuality of what went on. There are pieces of evidence in Nick Jones's declaration, which is 172 to 176. Why don't you just list those with the report? Thank you, and your time is concluded. Okay. The case of Hardy v. Kaiser is submitted. The last case for argument this morning is Nauer v. Kaiser Permanente. You may proceed.
judges: Wallace, McKeown, Moskowitz